**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| OSWALDO CRUZ, <br> MARY MARTHA LITTLEJOHN, and <br> ROBERT GREG WINN, on behalf of <br> themselves and a class of those similarly <br> situated, | Court File No. 08-civ-4704 (SHS)(THK) |
|                 Plaintiffs, | **NAMED PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL** |
| v. | |
| LAWSON SOFTWARE, INC., <br> LAWSON SOFTWARE AMERICAS, INC., | |
|                 Defendants. | |

---

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTS ..................................................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.     LAWSON CANNOT SATISFY ITS BURDEN OF
ESTABLISHING THAT NAMED PLAINTIFFS' ERISA CLAIMS
SHOULD BE DISMISSED UNDER THE STRINGENT RULE
12(B)(6) STANDARD ................................................................................. 4

      A. Named Plaintiffs' ERISA Claims Are Independent of Their Claims for
         Overtime ...................................................................................... 5

      B. Lawson Cannot Avoid Its Fiduciary Obligations Under ERISA by
         Illegally Withholding Payment to Its Employees ............................. 5

           1. ERISA Does Not Permit Employers to Avoid Their Obligations
              to Pay Benefits By Engaging in Illegal Activity ................... 6

           2. The Plan Does Not Define Compensation to Exclude Illegally
              Withheld Wages .................................................................. 8

           3. The Cases Cited By Lawson Are Not On Point ................... 10

      C. Count IV of the Complaint Asserts a Legitimate Claim, as Lawson's
         Decision Not to Credit Unpaid Overtime as Compensation Under the
         Terms of the Plan Is Subject to ERISA's Fiduciary Standards ............... 12

           1. In Determining What Compensation to Credit In Calculating
              Benefits, Lawson is a Named and Functional Fiduciary ....... 13

           2. The Cases and DOL Regulation Upon Which Lawson Relies
              Are Inapposite .................................................................... 16

      D. Named Plaintiffs' ERISA Recordkeeping Claim, Count III, Is Made
         Pursuant to ERISA § 502(a)(3), Which Provides For a Private Cause of
         Action ........................................................................................ 18

II.    NAMED PLAINTIFFS MAY SIMULTANEOUSLY PURSUE THEIR
COMMON LAW CLAIMS FOR UNJUST ENRICHMENT AS WELL
AS THEIR STATUTORY WAGE AND HOUR CLAIMS ............................. 21

CONCLUSION ....................................................................................................... 25

**INTRODUCTION**

In its Motion for Partial Dismissal, Defendants Lawson Software, Inc. and Lawson Software Americas, Inc. ("Lawson"), seek to dismiss Named Plaintiffs' ERISA claims and their common law claim for unjust enrichment.

Lawson states that Named Plaintiffs' ERISA claims are wholly dependent on alleged limiting language contained in the 401(k) Plan ("Plan") and that Named Plaintiffs' ERISA claims challenge Lawson's decision to classify putative class members as exempt. Lawson's argument ignores that, under ERISA, Lawson wears two hats (that of an employer and that of a fiduciary) which cannot be worn simultaneously and which carry with them very different duties to the putative class members.

Lawson wears its fiduciary hat when it serves as both a named and functional fiduciary for the purpose of administering the Plan. *See* Complaint at ¶¶ 19-20. When wearing its fiduciary hat, ERISA applies and Lawson must adhere to the highest duties known under the law and act solely in the interest of the Plan's participants when deciding whether or not participants (here the putative class members) should be credited with illegally withheld wages, including overtime pay, in determining their benefits under the Plan. *See Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996). Thus, in Count IV of their Complaint, Named Plaintiffs allege that Lawson, as a fiduciary, had a duty to credit illegally withheld overtime pay. Three federal district courts recently considered the same claims and concluded that such allegations were sufficient to withstand a motion to dismiss. *See Rosenberg v. IBM*, 2006 WL 1627108 (N.D. Cal. June 12, 2006); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 (N.D. Cal. June 13, 2005) (attached to the Affidavit of Llezlie L. Green as Exhibit A); and *In re Farmers Ins. Exchange Claims*

1

*Representatives' Overtime Pay Litigation,* 2005 WL 1972565 (D. Or. Aug. 15, 2005).

While Lawson may attempt to prove that it met its fiduciary obligations at trial or on

summary judgment, the current allegations are more than sufficient to withstand a motion

to dismiss under Rule 12(b)(6).  Moreover, contrary to Defendant's assertion, a private

cause of action most definitely exists for Named Plaintiffs' ERISA recordkeeping claim,

Count III of the Complaint.

Named Plaintiffs can simultaneously maintain their unjust enrichment claim,

Count V of the Complaint, along with their statutory wage and hour claims pursuant to

Federal Rule of Civil Procedure 8(e)(2), as these claims have been pled in the alternative

and the statutory claims do not otherwise provide an adequate remedy.

For these reasons and the reasons stated below, Defendant's Motion for Partial

Dismissal must be denied in its entirety.

## FACTS

Named Plaintiffs, current and former "Consultants" employed by Lawson, on

behalf of themselves and others similarly situated, allege that Lawson misclassified them

and others similarly situated as exempt from overtime.  Named Plaintiffs bring overtime

claims under the FLSA and the New York Minimum Wage Act, New York Labor Law §

650, *et seq.*, the New York Wage Payment Act, New York Labor Law § 190, *et seq.*, the

supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as

well as pension claims under ERISA and a common law unjust enrichment claim.

Named Plaintiffs' first ERISA claim alleges that Lawson, in its capacity as their

employer, failed to keep records "sufficient to determine the benefits due or which may

become due…." under the terms of the Plan, as required by ERISA.  *See* Complaint

Count III, ¶ 66.  Named Plaintiffs allege that Lawson's records are legally insufficient to determine benefits and that information regarding participants' overtime hours, and the compensation due as a result of those hours, is necessary to determine what benefits they are owed and, as a result, ERISA requires Lawson to track those hours.  *See Id.* ¶¶ 68-69.

Named Plaintiffs' second ERISA claim alleges that Lawson, in its capacity as a fiduciary for the Plan, violated ERISA's fiduciary requirements by failing to credit Named Plaintiffs' withheld overtime pay as compensation used to determine their benefits.  *See* Complaint Count IV, ¶¶ 73-76.  Named Plaintiffs allege that Lawson served as a functional fiduciary to the Plan by deciding what compensation would be credited under the Plan.  *See Id.* at ¶¶ 19, 75.  Named Plaintiffs further allege that Lawson was a named fiduciary with the authority under the Plan to make discretionary decisions as to whether to credit unpaid overtime as compensation.  *See Id.* at ¶¶ 20, 74.  Named Plaintiffs therefore allege that Lawson, operating as a fiduciary, violated ERISA's fiduciary standards by failing to credit unpaid overtime payments.  *See Id.* at ¶¶ 25, 76.

Lawson is the Plan Administrator.  *See* Motion for Partial Dismissal ("MPD") at Section III.(B.)(1) ("Lawson administered the Plan…")  Specifically, the Plan Adoption Agreement identifies Defendant Lawson Software, Inc. as the Plan Administrator pursuant to Article XIII of the Plan.  *See* ¶¶ 2 ("Employer Data") and 17 ("Plan Administration") of the Plan Adoption Agreement (attached to the Affidavit of Llezlie L. Green as Exhibit B).  Article XIII of the Plan specifically states that the Employer and Plan Administrator (which both capacities Defendant Lawson Software, Inc. has expressly assumed) are fiduciaries, and recites the relevant powers and responsibilities of the Plan Administrator as follows:

> The Plan Administrator shall have all powers necessary to administer the Plan and <u>total discretion</u> in interpreting and applying the provisions of the Plan, including, but not limited to, the power to construe and interpret the Plan documents, to decide all questions relating to an individual's eligibility to participate in the Plan; to determine the amount, manner and timing of any distribution of benefits or any withdrawal under the Plan; to approve and ensure the repayment of any loan to a Participant under the Plan; to resolve any claim for benefits; and to appoint or employ advisors, including legal counsel, to render advice with respect to any of the Plan Administrator's responsibilities under the Plan.

*See* Article 13.1 and 13.2 of the Plan (emphasis added) (attached to the Affidavit of

Llezlie L. Green as Exhibit C).

In addition to, and as an alternative to, her FLSA and New York wage and hour claims, Named Plaintiffs, on behalf of themselves and others similarly situated, have brought a claim for unjust enrichment. *See* Complaint Count V, ¶¶ 79-82. Named Plaintiffs allege in this claim that they and class members, by performing work for Defendant, conveyed a benefit to Defendant, which it knowingly received, to which Defendant is not entitled without paying for it. *See Id.* at ¶¶ 80-81. Named Plaintiffs and others similarly situated thus seek to recover the reasonable value of the benefits conveyed to Defendant. *See Id.* at ¶ 82.

## ARGUMENT

**I.    LAWSON CANNOT SATISFY ITS BURDEN OF ESTABLISHING THAT NAMED PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED UNDER THE STRINGENT RULE 12(b)(6) STANDARD**

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the non-moving party. *See Phelps v. Kapnolas,* 308 F.3d 180, 184 (2nd Cir. 2002). The Court should grant a motion to dismiss "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him

to relief." *Scotto v. Almenas*, 143 F.3d 105, 109-10 (2nd Cir. 1998), *citing Branham v. Meachum,* 77 F.3d 626, 628 (2nd Cir. 1996).

### A. Named Plaintiffs' ERISA Claims Are Independent of Their Claims for Overtime

Named Plaintiffs' ERISA claims are independent of their federal and New York overtime claims because they arise from Lawson's independent duty as a fiduciary of the Plan to credit all unpaid overtime as compensation. These independent claims for violations of ERISA's statutory provisions, which cannot be remedied under any other statute, can properly be asserted with or without accompanying overtime claims. The fact that Named Plaintiffs have also chosen to assert claims under the FLSA and New York overtime laws does not alter the ERISA claims' status as viable claims for relief that are currently appropriate for adjudication.

### B. Lawson Cannot Avoid Its Fiduciary Obligations Under ERISA by Illegally Withholding Payment to Its Employees

Lawson seeks dismissal of both of Named Plaintiffs' ERISA claims, Counts III and IV of the Complaint, and argues that, as a fiduciary, it need only credit compensation that was actually paid to employees, regardless of whether that pay was illegally withheld. *See* MPD at Section III.(B.). Lawson reasons that, because the Plan defines "Compensation" as that compensation actually paid, it is not subject to ERISA's recordkeeping and fiduciary duty requirements unless Named Plaintiffs and those similarly situated actually <u>receive</u> overtime compensation. *See Id.* Lawson cites to a lone district court case, *Maranda v. Group Health Plan, Inc.*, 2008 WL 2139584 (D. Minn. May 20, 2008), where a court has granted a motion to dismiss ERISA claims when simultaneous federal and state overtime claims were brought. The *Maranda* decision,

however, runs contrary to the reasoned decisions of other federal district courts that have considered such motions to dismiss.  *See*, *e.g.*, *Rosenberg*, *Gerlach* and *Farmers*.

According to Lawson's argument, if, hypothetically, Lawson as the employer failed to pay its employees at all, Lawson, as the fiduciary of the Plan, could simply refuse to provide any benefits.  Such an argument displays precisely why Lawson, as a fiduciary, has a duty to determine whether compensation under the Plan is being properly credited to include amounts that are illegally withheld.

### 1. ERISA Does Not Permit Employers to Avoid Their Obligations to Pay Benefits By Engaging in Illegal Activity

Incredibly, Defendants fail to address the applicable U.S. Department of Labor regulations concerning ERISA that specifically apply to Defendants' crediting of hours. It cannot be disputed that Defendants violated 29 C.F.R. § 2530.200b-2(a)(1), the "hour of service" regulation, which states in pertinent part:  "An hour of service is each hour for which an employee is paid, <u>or entitled to payment</u>, for the performance of duties for the employer during the applicable computation period."  (emphasis added).  This regulation applies directly to Defendants' failure to credit, as hours of service, the time spent by Named Plaintiffs and class members for performing work in excess of 40 hours in a week, as they were "entitled to payment" for such time.  This Court need look no further in concluding that Defendants are not entitled to dismissal of the ERISA claims based upon its argument that Lawson was only required to credit such hours that were "actually paid."  In addition to Defendants' violation of 29 C.F.R. § 2530.200b-2(a)(1), the Court should reject Defendants' "actually paid" argument for a host of other sound reasons, as described below.

It is undisputed that an employer establishing a pension plan may choose the amount of pension benefits, including what types of compensation are considered in calculating such benefits. However, once an employer has established an employee benefit plan under ERISA, the employer is under an obligation to provide benefits according to the terms of the plan. ERISA §§ 402(a)(1)(A), 404(a)(1)(D), 29 U.S.C. §§ 1102(a)(1)(A), 1104(a)(1)(D). *See also Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). Furthermore, nothing in ERISA permits an employer to avoid providing the benefit levels it has established by illegally refusing to pay its employees in violation of the FLSA. *See Gerlach*, No. C 05-0585, at * 5 ("Defendant should not be permitted to create the illusion of establishing a pension benefit plan under ERISA, only to avoid thereafter the obligation to pay benefits by violating federal law."). Notably, Lawson has not cited any authority to support its claim that a fiduciary may withhold benefits where the employer illegally withheld pay. No such authority exists.

No logical distinction can be drawn between Lawson's argument that it can illegally withhold payment of overtime, and thereby avoid its obligation to pay retirement benefits based on this compensation, and the argument that it could illegally withhold payment of all wages, regular and overtime, and thereby avoid the entirety of its obligation to pay benefits under the Plan. Indeed, when faced with precisely the argument presently advanced by Lawson, the Court in *Gerlach* held that:

> Defendant's argument is not persuasive. Under Defendant's interpretation of the Plan, a Plan participant could earn wages that qualify, under the terms of the Plan, as certified compensation, but could be deprived of the corresponding pension credits if Defendant illegally withheld those wages.

*Gerlach*, No. C 05-0585, at * 5.

Moreover, the recent decision in *Rosenberg v. IBM*, 2006 WL 1627108 (N.D. Cal. 2006), further supports Named Plaintiffs' position.  In *Rosenberg*, the plaintiffs brought claims pursuant to the FLSA, California wage and hour laws along with the very same ERISA claims advanced by Named Plaintiffs in the instant action.  The *Rosenberg* court denied defendant's motion to dismiss the ERISA claims, and rejected the identical arguments asserted by Defendant Lawson in the instant Motion for Partial Dismissal.

Specifically, the *Rosenberg* court noted that the defendant there contended (as Lawson does here) that the pension and savings plans at issue in that case required "only that plaintiffs be credited for compensation *actually* paid; they do not require that plaintiffs be credited for compensation they *should have been paid.*"  *Rosenberg v. IBM*, 2006 WL 1627108 at * 3 (emphasis in original).  The *Rosenberg* defendant thus argued that because the plaintiffs' ERISA claim was "not based on a violation of the Plans' requirements, but rather on the erroneous premise that IBM, as their employer, should have paid them more, the claim is not cognizable under the benefit plans or under ERISA."  *Id.*  The *Rosenberg* court, however, rejected the defendant's arguments in this regard and denied its motion to dismiss.  *Id.* at * 5.  The same analysis applies here.

## 2.  The Plan Does Not Define Compensation to <u>Exclude</u> Illegally Withheld Wages

Even if it were permissible for an employer to define compensation to exclude illegally withheld wages, which, as set forth above, it is not, Lawson's proffered interpretation of how certified compensation is defined in the Plan runs afoul of the federal common law rules which govern the interpretation of ERISA plans.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996); *Dobson v. Hartford Fin. Servs. Group, Inc.*, 389 F.3d 386, 399 (2nd Cir. 2004);

*Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000) (holding that an

ERISA plan is a type of contract, the meaning of which "is ordinarily decided by the

court, rather than by a party to the contract, let alone the party that drafted it").

> Among the central principles of contract interpretation are that:
>
> [U]nder New York law, '[e]ffect and meaning must be given to every term
> of the contract, and reasonable effort must be made to harmonize all of its
> terms.' (citations omitted) 'We read the writing as a whole. We seek to
> give each clause its intended purpose in the promotion of the primary and
> dominant purpose of the contract....' (citations omitted)

*India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2nd Cir. 2005); *see also FDIC v. New*

*Hampshire Ins. Co.*, 953 F.2d 478, 481 (9th Cir. 1991) ("[a] written contract must be read

as a whole and every part interpreted with reference to the whole" and "[p]reference must

be given to reasonable interpretations as opposed to those that are unreasonable, or that

would make the contract illusory"); Rest. 2d Contracts § 203(a) (1981) ("an interpretation

which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an

interpretation which leaves a part unreasonable, unlawful, or to no effect"). Thus, as

contracts, ERISA plans include, "not only the promises set forth in express words, but, in

addition, all such implied provisions as are indispensable to effectuate the intention of the

parties and as arise from the language of the contract and the circumstances under which

[they were] made." *Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 329 (1927); *see*

*also Dobson*, 389 F.3d at 399; 11 Richard A. Lord, Williston on Contracts § 31:7, at 321

(4th ed. 1999).

These federal common law rules of interpretation mandate the interpretation of

the Plan asserted by Named Plaintiffs: That Lawson will pay its employees for their

service in accordance with the applicable wage and hour laws, and that Lawson

employees will be entitled to benefits under the Plan based upon those wages. Conversely, these rules preclude Lawson's position that it is allowed to engage in illegal activity and thereby deprive participants of what would otherwise be compensation for which they would receive credit. When applied in the context of the Plan as a whole, and given a reasonable meaning, the Plan's definitions of compensation must be construed to include compensation for all service that an employee renders to Lawson, the payment of which is required by law. Although the Plan does not expressly require Lawson to comply with applicable state and federal wage and hour laws, and pay the wages due to its employees, the governing principles of contract interpretation provide that this Court should imply such an obviously contemplated term. *See Dobson*, 389 F.3d at 399.

The purpose of establishing a 401(k) plan is to provide employees a retirement benefit. However, under Lawson's interpretation of the Plan, its illegal refusal to pay all employee wages, including regular as well as overtime pay, would provide a purportedly legal way for it to skirt its obligations under the Plan. This would render the entire benefit structure established in the Plan illusory and therefore inconsistent with the purpose of establishing the Plan in the first place.

### 3. The Cases Cited By Lawson Are Not On Point

This Court should not consider the cases relied upon by Defendant in support of its position. For example, in *Maranda v. Group Health Plan, Inc.*, 2008 WL 2139584, the district court chose not to follow the three persuasive cases which support Named Plaintiffs' position here (*Rosenberg*, *Gerlach*, and *In re Farmers*, *supra*). The *Maranda* decision, however, is completely devoid of citation to any legal authority supporting its conclusion that the plaintiff's ERISA claims should be dismissed without discovery.

Moreover, the *Maranda* court's passing mention of the language of the plan in that case was not a basis of its decision to dismiss the ERISA claims there. *See Maranda*, 2008 WL 2139584, *2. The *Maranda* court, rather, dismissed the ERISA claims because it concluded that the defendant's misclassification of its employees was not a fiduciary act.[1]

Named Plaintiffs thus submit that, to the extent this Court seeks guidance from its fellow federal district courts, it should follow the reasoned decisions of the courts in *Rosenberg*, *Gerlach*, and *In re Farmers*, rather than in *Maranda*.

In *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1339, 1442 (11th Cir. 2000), the court upheld the granting of <u>summary judgment</u> to the defendant and found that, after the parties had performed discovery and developed a factual record, the plaintiff was not an employee of the defendant, and was therefore excluded from participating in the ERISA plan and not entitled to such benefits. Similarly, in *Bell v. Allstate Ins. Co.*, 822 F. Supp. 1222, 1225-1226 (D.S.C. 1992), the court made findings of fact <u>after considering the testimony of witnesses</u> that the plan at issue explicitly excluded the type of compensation sought by the plaintiffs.

Here, as discussed above, there is no specific exclusion in the Plan for illegally withheld wages, no factual record has been developed as discovery has only recently commenced, and the well-pled allegations of the Named Plaintiffs remain that they have

---

[1] This conclusion reflects the *Maranda* court's misunderstanding of the plaintiff's ERISA breach of fiduciary claim there, as the plaintiff had asserted, rather, that the defendant's failure to <u>credit</u> a plan participant's accounts constituted the breach of fiduciary duty, not the act of misclassification. Here, the Named Plaintiffs similarly do not contend that Lawson's decision, as an employer, not to pay the putative class members overtime is a breach of fiduciary duty. The true issue is whether Lawson's decision not to credit unpaid overtime hours as compensation pursuant to the Plan constitutes an act of <u>plan administration</u> which gives rise to a breach of fiduciary duty. *See* Section I.(C.), *infra*.

been misclassified as exempt from the FLSA and New York wage and hour laws.  It would simply be premature for this Court to dismiss Named Plaintiffs' ERISA claims at this early stage in the case.

Named Plaintiffs thus respectfully request the Court to follow the reasoning of the *Rosenberg* and *Gerlach* courts in the two cases most similar to the one at bar, reject Lawson's "actually paid" argument and deny its instant Motion.

### C. Count IV of the Complaint Asserts a Legitimate Claim, as Lawson's Decision Not to Credit Unpaid Overtime as Compensation Under the Terms of the Plan Is Subject to ERISA's Fiduciary Standards

As Lawson recognizes, ERISA requires employers to wear two hats and "act in a dual capacity as both fiduciary to the plan and as employer."  *Phillips v. Amoco Oil Co*., 799 F.2d 1464, 1471 (11th Cir. 1986).  Business decisions, such as whether to create, amend, or terminate plans, for instance, do not implicate an employers' fiduciary status. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *accord Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000).  However, because sponsor and fiduciary acts are treated differently under ERISA, where, as here, an employer chooses to serve as both a sponsor and a fiduciary of a benefits plan, it must be careful to distinguish when it is acting in its fiduciary/administrator capacity and when it is acting in its sponsor/employer capacity. *See Pegram*, 530 U.S. at 225.

Lawson's argument that its FLSA classification decisions do "not pertain to Plan management or administration," and therefore cannot form the basis of an ERISA breach of fiduciary claim, misapprehends Named Plaintiffs' claims.  *See* MPD at Section

III.(B.)(2).  Named Plaintiffs do not allege a breach of fiduciary duty for Lawson's

decision, as an employer, not to pay the putative class members overtime.

Rather, the issue before the Court is whether Lawson's decision not to credit

unpaid overtime hours as compensation under the terms of the Plan constitutes an act of

plan administration which may give rise to a breach of fiduciary duty.  Under ERISA,

these acts are fiduciary in nature and Named Plaintiffs correctly allege a claim for breach

of fiduciary duty arising out of those acts.  *See Farmers*, 2005 WL 1972565 at * 4 (citing

*Lockheed v. Spink*, 517 U.S. 882, 890 (1996) (defining fiduciary and settlor functions)).

Lawson's attempt to conflate the decision not to pay overtime with the decision not to

credit unpaid overtime under the Plan ignores the distinction drawn under ERISA with

respect to these separate acts.  *See Id.*

### 1.  In Determining What Compensation to Credit In Calculating Benefits, Lawson is a Named and Functional Fiduciary

Under ERISA, Lawson can be a fiduciary by virtue of being identified as the

Plan's "named fiduciary" and/or by performing certain fiduciary functions.  Under

ERISA's functional definition, anyone "who exercises discretionary control or authority

over the plan's management, administration, or assets... is an ERISA 'fiduciary.'"[2]

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citations omitted).  Determining

eligibility and calculating benefits are acts of plan administration.  *See Varity*, 516 U.S. at

---

[2] *See also* ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A) ("a person is a fiduciary with
respect to a plan to the extent (i) he exercises any discretionary authority or discretionary
control respecting management of such plan…or (iii) he has any discretionary authority
or discretionary responsibility in the administration of  such plan"); *Kayes v. Pacific
Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995); *Donovan v. Mercer*, 747 F.2d 304, 308-
09 (5th Cir. 1984).

511-512. Here, the Complaint asserts that Lawson is the named fiduciary for the Plan.[3]

Moreover, Named Plaintiffs allege that Lawson acted as a functional fiduciary when it

made the decision not to credit overtime compensation under the Plan.  *See* Complaint ¶¶

19, 75.  Thus, under either definition, Lawson is subject to ERISA's fiduciary duties.

Fiduciary duties under ERISA are "the highest known to the law."  *Howard*, 100

F.3d at 1488 (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2nd Cir. 1982)

(Friendly, J.)).  Under ERISA, a fiduciary is required to "discharge his duties with respect

to a plan solely in the interests of the participants and beneficiaries…for the exclusive

purpose of…providing benefits..."  29 U.S.C. § 1104(a)(1)(A).  In carrying out their

duties, fiduciaries must act with "'an eye single' toward beneficiaries' interests."

*Pegram*, 530 U.S. at 235 (citation omitted).  A fiduciary is also required to discharge his

duties "in accordance with the documents and instruments governing the plan."  *Id.*

Thus, Lawson, acting as fiduciary with an "eye single" to the participants'

interests when determining what compensation to credit, cannot rely on its determination,

as an employer, regarding what compensation Named Plaintiffs and the class were

entitled to.  This is so because that determination was not subject to ERISA's fiduciary

standards and could have been made in a self-interested manner.  Accordingly, ERISA

requires Lawson, in its fiduciary capacity, to make an independent, separate

determination as to whether to credit unpaid overtime under the Plan.  *See Cent. States,*

---

[3] Under ERISA, a plan's "named fiduciary" must "have authority to control and manage
the operation and administration of the plan" and is plan fiduciary as a result of that
discretionary authority.  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1); ERISA §
3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).  *See also Mercer*, 747 F.2d at 309.
According to Named Plaintiffs' allegations and the pertinent Plan documents, Lawson is
a named fiduciary with the requisite discretionary authority.  *See* Complaint ¶¶ 20, 74;
*see also* Exhibits B and C attached to the Affidavit of Llezlie L. Green.

*Southeast & Southwest Area Pension Fund v. Central Trans., Inc.*, 472 U.S. 559, 572 (1985).  The fact that Lawson appears to have collapsed these two distinct duties into a single decision in violation of ERISA's fiduciary standards is evidenced by Lawson's stark admission that it did not pay Named Plaintiffs (and the class by implication) for the overtime worked and, as a result, had no obligation to credit those hours under the Plan.  *See* MPD at Section III.(B.)(2) ("Lawson was wearing its 'employer hat' when it made the complained-of decisions with respect to compensation").

In *Farmers,* the court recognized the distinction between the employer decision to pay overtime and the fiduciary decision to credit participants for unpaid overtime, an issue not addressed in the cases upon which Lawson relies.  *See Farmers*, 2005 WL 1972565 at * 4.  Based upon that distinction, and the accompanying fiduciary standards under ERISA, the court denied the defendant's motion to dismiss.  *See Id*.  Although the *Farmers* court did hold that there was a "very fine line" between the business decision of not paying an employee for time and the fiduciary decision of not crediting an employee based on the same service, the court found that a distinction existed and was significant enough to defeat a motion to dismiss.  *Id*.  Likewise, the *Rosenberg* and *Gerlach* courts both recognized the viability of the same claims and rejected the defendants' motions to dismiss therein.  *See Rosenberg*, 2006 WL 1627108 at * 5; *see also Gerlach*, at 4-8.

While Lawson may dispute that it breached ERISA's fiduciary standards at trial or on summary judgment, because fiduciary status and breaches are fact-intensive inquiries under ERISA, they are not appropriately resolved in a motion to dismiss under Rule 12(b)(6).  *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2nd Cir. 2002) (finding that a complaint could survive a motion to dismiss based on the bare

allegation that a defendant was a fiduciary); *Rosenberg*, 2006 WL 1627108 at * 5; *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp.2d 658, 665 (E.D. Tex. 2004); *In re AEP ERISA Litig.*, 327 F. Supp.2d 812, 827 (S.D. Ohio 2004); *In re CMS Energy Litig.*, 312 F. Supp.2d 898, 907-09 (E.D. Mich. 2004). The court's reasoning in *Rosenberg*, where it denied the defendant's motion to dismiss in a case involving ERISA claims nearly identical to those asserted in the instant action, is particularly notable:

> Whether [defendant] IBM assumed fiduciary status, including when and the extent to which it was functioning in the capacity of a plan administrator, will require a searching inquiry into the facts and is therefore inappropriate for resolution on a motion to dismiss. Because the court is of the view that whether IBM was wearing its employer or its plan administrator "hat" is at least in part a factual issue, it cannot be decided as a matter of law at this stage of the litigation and plaintiffs are entitled to discovery on the issue.

*Rosenberg*, 2006 WL 1627108 at * 5.

### 2. The Cases and DOL Regulation Upon Which Lawson Relies Are Inapposite

In seeking to establish that the conduct at issue in this case is not subject to ERISA's fiduciary duties, Lawson primarily relies on two cases, each of which involved the settlor function of establishing employees' levels of pay. *See Ecklekamp v. Beste*, 201 F. Supp.2d 1012, 1022-1023 (E.D. Mo. 2002), *aff'd* 313 F.3d 863 (8th Cir. 2002) and *Ballaris v. Wacker Siltronic Corp.*, 2002 WL 926272 (D. Or. 2002).

In *Ecklekamp*, the alleged fiduciary act was that of determining how much individuals would be paid, and in *Ballaris*, the alleged fiduciary act was whether certain individuals would be paid. None of the plaintiffs in those cases alleged a fiduciary breach arising out of discretionary administrative acts, such as crediting compensation

under a plan.  As these cases only involved settlor functions, not acts of plan administration, they are of no consequence here.

The above cases acknowledge, and Named Plaintiffs do not dispute, that business decisions about compensation which have a collateral effect on employee benefits do not become fiduciary acts merely by virtue of that collateral effect.  However, the plaintiffs in the cases relied upon by Defendant claimed that the compensation decision itself, rather than an administrative decision regarding what should be credited as compensation under a plan, was a breach of fiduciary duty.  Here, in contrast, Named Plaintiffs allege that Lawson's decision, as a fiduciary, not to credit unpaid overtime compensation is a fiduciary act of plan administration that violates ERISA's fiduciary standards.  Named Plaintiffs here do not allege that Lawson's decision not to pay overtime is a fiduciary act.

In addition to citing *Ecklekamp* and *Ballaris*, Lawson relies on a misinterpretation of the applicable U.S. Department of Labor regulations and ignores the allegations in the Complaint in asserting that a fiduciary's decision not to credit compensation is a "ministerial function" that cannot give rise to a claim for breach of fiduciary duty.  *See* MPD at Section III.(B.)(2) (citing 29 C.F.R. § 2509.75-8).  The Department of Labor statement relied on by Lawson is contained in an answer to a question that is inapplicable here.  *See* 29 C.F.R. § 2509.75-8.  The question appearing in the regulation, which was not cited or quoted by Lawson, is: "Are persons <u>who have no power to make any decisions as to plan policy, interpretations, practices or procedures</u>, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan?"  29 C.F.R. § 2509.75-8, Q D-2.  (emphasis added).

17

As the question demonstrates, the regulation merely clarifies that an individual who is not otherwise a fiduciary does not become a fiduciary simply by performing non-fiduciary, and purely ministerial, functions.

In addition, a portion of the answer not cited by Lawson clearly states that "persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries." *Id*. Thus, the regulation draws a clear distinction between fiduciaries who exercise their discretion to determine, for example, whether a certain type of compensation will be credited to participants, and non-fiduciaries who hold and exercise no discretionary authority or control under the plan, but instead perform the ministerial task of tabulating employees' total compensation for the year according to the policies established by the plan fiduciaries. Here, both the language of the governing plan documents and Named Plaintiffs' allegations of functional fiduciary status make it clear that Lawson had the ultimate power to decide whether to credit overtime as compensation to be used in benefit determinations.

This is the conclusion reached by the *Rosenberg* court, as it rejected the very same argument advanced by Defendant here. *See Rosenberg*, at *4-5. Deciding what type of compensation to credit is a fiduciary act of plan administration. Calculating a participant's compensation and computing the participant's resulting benefit entitlement according to the plan's benefit accrual formula is not. The cited regulation addresses the latter, which is not at issue in this case, and thus Lawson's reliance on it is misplaced.

### D. The ERISA Recordkeeping Claim, Count III, Is Made Pursuant to ERISA § 502(a)(3), Which Provides For a Private Cause of Action.

In a footnote, Defendants assert that Named Plaintiffs' claim for violation of ERISA's recordkeeping provision, ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1), should be

dismissed because that provision does not provide a private cause of action.  *See* MPD at

fn. 4.  Defendants, however, misinterpret Count III of the Complaint, and rely on a single

district court case, *Colin v. Marconi Commerce Systems Employees' Retirement*

*Plan*, 335 F. Supp.2d 590 (M.D.N.C. 2004).  Defendants' argument fails for the simple

reason that Count III asserts a claim pursuant to ERISA Section 502(a)(3), 29 U.S.C. §

1132(a)(3), <u>not</u> Section 209(a)(1), as Defendants wrongly assert.

ERISA § 209, 29 U.S.C. § 1059, requires an employer such as Lawson to

"maintain records with respect to each of his employees sufficient to determine the

benefits due or which may become due to such employees."  Defendants do not contend

that they keep records of the time for which they do not compensate the class members.

Consequently, if the Court or a jury should determine (based on any of Named Plaintiffs'

other claims), that such time should be compensated, Lawson will be in violation of

ERISA § 209.

Defendants contend, however, that there is no private cause of action to enforce

ERISA § 209.  As explained more fully below, this contention is without merit because it

disregards the plain meaning of the statute and dispositive U.S. Supreme Court authority.

Defendant cites to the *Colin* decision in support of its view.  The *Colin* court,

however, concluded that ERISA § 209, in a vacuum, does not provide for a private right

of action.  *Colin*, 335 F. Supp.2d at 606.  Defendants' citation to *Colin* misses the mark

because ERISA <u>explicitly</u> confers on employee benefit plan participants, such as Named

Plaintiffs, the right to bring suit to enforce its provisions.  ERISA § 502(a)(3), 29 U.S.C.

§ 1132(a)(3), could hardly be more clear.  It provides that a civil action may be brought:

> <u>[B]y a participant</u>. . . (A) to enjoin any action or practice which violates
> any provision of this title or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce
any provisions of this title or the terms of the plan. (emphasis added)

It cannot be disputed that Named Plaintiffs are participants in one or both of the

Plans at issue, nor can it be disputed that Section 209 is part of Title I of ERISA.

Incredibly, Defendants fail to even mention this language of Section 502(a)(3), or the

controlling U.S. Supreme Court decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996).

The defendant in *Varity* argued that because another more specific provision of Title I of

ERISA, Section 502(a)(2), 29 U.S.C. § 1132(a)(2), provided a cause of action to remedy

breaches of fiduciary duty, Section 502(a)(3), which provides a cause of action to remedy

"any" violation of Title I, could not apply. The Supreme Court did not agree, instead

holding that Section 502(a)(3) must be accorded its plain meaning:

> Such a reading is consistent with § 502's overall structure. Four of that
> section's six subsections focus upon specific areas, *i.e.*, the first (wrongful
> denial of benefits and information), the second (fiduciary obligations
> related to the plan's financial integrity), the fourth (tax registration), and
> the sixth (civil penalties). The language of the other two subsections, the
> third [§ 502(a)(3)] and the fifth, creates two "catchalls," providing
> "appropriate equitable relief" for "<u>any</u>" statutory violation.

516 U.S. at 512 (emphasis added).

Defendants here fail to cite, let alone discuss, *Varity*. Instead, Lawson relies on

the highly questionable ruling in *Colin*. In *Varity*, the Supreme Court interpreted

Section 502(a)(3) according to its literal meaning, in particular as conferring on plan

participants the right to bring suit to enforce <u>any</u> provision of Title I of ERISA. *See*

*Varity*, 516 U.S. at 510. Section 209, at issue here, like Section 404, at issue in *Varity*, is

undisputedly part of Title I. *See also Harris Trust and Savings Bank v. Salomon Smith*

*Barney, Inc.*, 530 U.S. 238, 246 (2000). There the Court again read Section 502(a)(3)

literally, and held that non-fiduciaries are subject to suit there under that ERISA

provision because the language of the section does not limit the universe of defendants. The words of Section 502(a)(3) do not limit the provisions of Title I that a plan participant may enforce any more than they limit the universe of defendants.

The logic of *Varity* on this issue has been adopted by the *Farmers* court, which rejected the very same arguments being made by Defendants here, and, in specifically discussing *Colin*, found that Section 502(a)(3) "does not appear to preclude a private right of action such as plaintiffs allege." *Farmers*, *supra*, 2005 WL 1972565 at *2-4. Named Plaintiffs most certainly have a private cause of action to pursue their ERISA recordkeeping claims pursuant to Section 502(a)(3).

## II.    NAMED PLAINTIFFS MAY SIMULTANEOUSLY PURSUE THEIR COMMON LAW CLAIMS FOR UNJUST ENRICHMENT AS WELL AS THEIR STATUTORY WAGE AND HOUR CLAIMS

Defendants wrongly assert that Named Plaintiffs' common law claims for unjust enrichment should be dismissed because they have a "perfectly adequate" remedy in their FLSA and New York wage and hour statutory claims. This Court should not afford Defendants the relief they seek, however, as Defendants' motion is premature and the Federal Rules of Civil Procedure permit the simultaneous pleading of similar statutory and common law claims.

As this Court is well-aware, Rule 8(e)(2) permits a party considerable flexibility in pleading by expressly allowing claims for relief or defenses in an alternative or even hypothetical manner. *See* Fed. R. Civ. P. 8(e)(2) ("[a] party may also state as many separate claims or defenses as the party has regardless of consistency."). In complex legal proceedings, flexible pleading is essential to a full presentation of all relevant facts and legal theories to ensure a complete determination of disputes. Here, Named Plaintiffs

have pled in the alternative, maintaining legal claims pursuant to both statutory and common law theories. Their ability to do so is based upon fundamental rules governing civil procedure in the federal courts.

Federal district courts have readily denied defendants' motions in scenarios identical to the one at bar when a defendant asserts that unjust enrichment claims should be dismissed when the plaintiffs have also brought claims under the FLSA. *See Kaur v. Royal Arcadia Palace, Inc.*, 2007 WL 4591250, *17 (E.D.N.Y. Dec. 27, 2007) (where defendant claimed that unjust enrichment and quantum meruit claims should be dismissed because there was an adequate remedy at law, the court denied the motion in stating that "Plaintiffs assert both claims in the alternative to the FLSA and contract claims, so that those claims would only be adjudicated if the FLSA and contract claims were dismissed and there was no adequate remedy at law."); *Marquez v. Partylite Worldwide, Inc.*, 2007 WL 2461667, *1, 6 (N.D. Ill. Aug. 27, 2007) ("[A]lthough Plaintiff's state common law claims are based upon the same facts as his FLSA claim, dismissal under Rule 12(b)(6) is not appropriate. . . Plaintiff has alleged claims under both the FLSA and the common law theories of quantum meruit and unjust enrichment. Federal Rule of Civil Procedure 8(e)(2) provides that a party may plead alternative theories of relief under both legal and equitable grounds. While Plaintiff may not obtain double recovery, he is free to pursue relief under the FLSA as well as unjust enrichment and quantum meruit."); *Roble v. Celestica Corp.*, 2006 WL 3858396, *3 (D. Minn. Dec. 29, 2006) ("While additional discovery may reveal that plaintiffs' common law claims are in fact duplicative of the statutory claims, the Court cannot conclude at this stage of the proceedings that the underlying common law claims are preempted by the FLSA."); *Jackson v. Wal-Mart Stores, Inc.*, 2005 WL 3191394, *8 (Mich. App. Nov. 29, 2005)

(court held that the FLSA did not provide plaintiffs with an adequate remedy at law

precluding their equitable claims); *Davis v. Lenox Hill Hosp.*, 2004 WL 1926087, *7

(S.D.N.Y. Aug. 31, 2004) (same).  The *Davis* court's analysis of this issue is particularly

analogous to the instant action:

> The defendants mistakenly contend that Davis cannot simultaneously assert claims for unjust enrichment and violation of the FLSA. . . Insofar as the defendants' argument is about overtime compensation, they correctly note that Davis cannot *recover* under both federal and state law for the enforcement of the same right. At the pleading stage, however, parties are entitled to plead causes of action under both state and federal law to vindicate the same right unless the federal law preempts the state claim. The FLSA does not preempt state law in the area of overtime compensation.  (citation omitted). If Davis prevails at trial on both her FLSA and unjust enrichment claim, she will be limited to the remedy provided by the FLSA for the violation of its overtime compensation requirements. At the pleading stage, however, she is free to pursue her claim under both state and federal law.

*Davis v. Lenox Hill Hosp.*, 2004 WL 1926087 at * 7 (S.D.N.Y. Aug. 31, 2004)

(emphasis in original).

In this action, Named Plaintiffs should be permitted to pursue both statutory and

common law claims, even if this Court would not allow a double recovery if Named

Plaintiffs and class members prevailed on all such claims at trial.  The unjust enrichment

claim is obviously not identical to the FLSA and New York wage and hour claims.  One

significant difference is that the limitations period for unjust enrichment in New York is

six years, significantly longer than the applicable limitations periods under the FLSA and

New York wage and hour laws.  *See Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 518,

520 (2nd Cir. 2001); *see also Serdarevic v. Advanced Medical Optics, Inc.,* 2007 WL

2774177, *9 (S.D.N.Y. September 25, 2007).

Hypothetically, if discovery showed that changes in the workplace three years ago

substantially lessened the amount of allegedly uncompensated time worked by class

members (making it arguably *de minimis* from 2005 through the present), damages could be much greater for class members who worked between the years of 2002 and 2005.  In such a situation, the FLSA and/or New York wage and hour laws would not provide a remedy for those class members working for Defendant as Consultants from 2002 to 2005.  Named Plaintiffs' unjust enrichment claim, however, would confer a remedy upon all class members because it has a six-year limitations period.

Moreover, if this Court dismissed any of Named Plaintiffs' statutory claims, including the FLSA, New York wage and hour or ERISA claims, Named Plaintiffs would no longer have adequate remedies at law, and Named Plaintiffs' equitable unjust enrichment claims would exist as their only available remedies.  *See Kaur*, *supra*, at *17.

The two cases upon which Defendant primarily relies in support of its argument are either distinguishable or inapposite from the case at bar.  In *Bongat v. Fairview Nursing Care Center, Inc.*, 341 F. Supp.2d 181 (E.D.N.Y. 2004), the court ruled on a motion for summary judgment brought by the plaintiffs, and granted their motion with respect to their FLSA claims.  The *Bongat* court ruled at the summary judgment stage after the parties had been able to perform discovery concerning all of the plaintiffs' legal claims, and concluded that the plaintiffs' FLSA claim constituted an adequate remedy (no doubt because the court ruled in favor of plaintiffs with regard to the FLSA liability issue).  *See Bongat*, 341 F. Supp.2d at 188-89.  Here, no discovery has taken place such that this Court could reasonably make a determination whether the FLSA or New York wage and hour legal claims provide Named Plaintiffs with an adequate remedy such that dismissal of their unjust enrichment claim would be appropriate.

Likewise, Defendants' reliance on *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 883 N.E.2d 990, 996, 854 N.Y.S.2d 83, 89 (2008) is wanting.  In *Samiento*, the New York Court of Appeals considered the legitimacy of  restaurant server plaintiffs' claims alleging that defendants had wrongfully retained service charges and automatic gratuities added to meal and banquet bills in place of patrons' direct tip payments to servers.  The *Samiento* plaintiffs did not allege any claims that they were owed overtime, and did not assert a claim pursuant to the FLSA.  The *Samiento* court concluded, without citation to any legal authority or the record evidence, that the plaintiffs' unjust enrichment claims were properly dismissed.  The facts and legal claims brought in *Samiento* are nothing like those asserted here, and the court's lack of legal analysis on this issue does nothing to support Defendants' position in the instant action.

Based upon the proper pleadings contained in the Complaint, this Court should deny Defendants' motion to dismiss their unjust enrichment claim.

## CONCLUSION

Based upon the foregoing, Named Plaintiffs hereby request that the Court deny Defendants' Motion for Partial Dismissal in its entirety, and for such other relief as the Court deems fair and just.

Dated:  June 24, 2008                                  COHEN, MILSTEIN, HAUSFELD &
                                                                       TOLL, PLLC

                                                                       */s/Llezlie L. Green*
                                                                       Christine E. Webber
                                                                       Llezlie L. Green, LG-0911
                                                                       1100 New York Ave., NW, Suite 500
                                                                       Washington, DC  20005
                                                                       Telephone:  202-408-4600
                                                                       Facsimile:  202-408-4699

                                                                       Clayton D. Halunen

25

Charles V. Firth
HALUNEN & ASSOCIATES
220 South Sixth Street, Suite 2000
Minneapolis, MN 55402
Telephone:  612-605-4098
Facsimile:  612-605-4099

**ATTORNEYS FOR NAMED
PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of June, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Loretta Gastwirth
Richard M. Howard
Meltzer, Lippe, Goldstein & Breitstone, LLP
190 Willis Avenue
Mineola, NY 11501
(516) 747-0300
(516) 237-2893 (Facsimile)

and via first-class mail to the following:

Sara G. McGrane, #233213
Ruth S. Marcott, #176825
FELHABER, LARSON, FENLON & VOGT, P.A.
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321
(612) 338-0535 (Facsimile)

**Attorneys for Defendants Lawson Software, Inc. and Lawson Software Americas, Inc.**

_____*/s/ Llezlie L. Green*_____
Llezlie L. Green

# EXHIBIT A

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  JASMIN GERLACH, on behalf of              No. C 05-0585 CW
   herself and all others similarly
9  situated,                                 ORDER DENYING
                                             DEFENDANT'S
10             Plaintiff,                     MOTION TO
                                             DISMISS
11       v.

12  WELLS FARGO & CO.,

13             Defendant.

14  _____/

15

16       Defendant Wells Fargo & Co. moves, pursuant to Federal Rule

17  of Civil Procedure 12(b)(6), to dismiss the first and second

18  claims for relief in the complaint filed by Plaintiff Jasmin

19  Gerlach.  Plaintiff opposes the motion.  The matter was heard on

20  May 20, 2005.  Having considered the parties' papers and oral

21  argument on the motion, the Court DENIES Defendant's motion to

22  dismiss.

23                          BACKGROUND

24       The following facts are alleged in Plaintiff's complaint.

25  Plaintiff, from October, 1995 to October, 2004, worked as a

26  business systems employee for Wells Fargo in Phoenix, Arizona.

27  At all times relevant to this action, Plaintiff was covered by

28  the Wells Fargo Cash Balance Plan (Plan), a pension benefits

United States District Court
For the Northern District of California

1  plan organized under the Employee Retirement Income Security Act

2  (ERISA).  Defendant is both the Plan's sponsor and the Plan's

3  administrator.

4       During her employment with Defendant, Plaintiff routinely

5  worked more than forty hours per week.  However, she was not

6  paid overtime compensation (one and one-half times her regular

7  hourly wage) for her overtime work because Defendant illegally

8  classified her and all other business systems employees as

9  exempt from the Fair Labor Standards Act (FLSA).  Plaintiff was

10 not exempt from the FLSA because her job duties involved little

11 or no exercise of discretion and did not require special

12 expertise.  In addition, Defendant failed to keep proper time

13 records of Plaintiff's overtime work.

14      Under the Plan, participants' pension benefits are

15 determined in large part by the total amount of certified

16 compensation they earn.  By withholding Plaintiff's premium

17 overtime pay, Defendant failed to take into account all

18 certified compensation owed to Plaintiff, thereby illegally

19 reducing the amount of pension benefits to which she is

20 entitled.

21      On February 9, 2005, Plaintiff filed her complaint, which

22 alleges three causes of action.  The first two causes of action,

23 on behalf of Plaintiff and all business systems employees

24 employed by Defendant within the past six years (ERISA class),

25 allege

26 (1') failure to maintain adequate records' for purposes of

27 calculating ERISA benefits, and (2) violation of ERISA section

28

2

1  404(a)(1) for breach of fiduciary duty.  Plaintiff requests,

2  pursuant to section 502(a)(3), that Defendant credit her and the

3  ERISA class with all earned overtime pay as certified

4  compensation.  Plaintiff's third cause of action, on behalf of

5  herself and all business system employees employed by Defendant

6  within the last three years (FLSA class), alleges that Defendant

7  violated the FLSA by failing adequately to compensate non-exempt

8  employees for overtime work.  On April 8, 2005, Defendant moved

9  to dismiss the first and second causes of action.

10                          LEGAL STANDARD

11      A motion to dismiss for failure to state a claim will be

12  denied unless it is "clear that no relief could be granted under

13  any set of facts that could be proved consistent with the

14  allegations."  Falkowski v. Imation Corp., 309 F.3d 1123, 1132

15  (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S.

16  506 (2002).  A complaint must contain a "short and plain

17  statement of the claim showing that the pleader is entitled to

18  relief."  Fed. R. Civ. P. 8(a).  "Each averment of a pleading

19  shall be simple, concise, and direct.  No technical forms of

20  pleading or motions are required."  Fed. R. Civ. P. 8(e).  These

21  rules "do not require a claimant to set out in detail the facts

22  upon which he bases his claim.  To the contrary, all the Rules

23  require is 'a short and plain statement of the claim' that will

24  give the defendant fair notice of what the plaintiff's claim is

25  and the grounds on which it rests."  Conley v. Gibson, 355 U.S.

26  41, 47 (1957).

27                            DISCUSSION

28                                3

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

I.    Whether Unpaid Overtime Qualifies as Certified Compensation

Defendant's first argument is that Plaintiff's ERISA claims should be dismissed because the Plan's definition of certified compensation does not include owed but unpaid overtime.  Under section 2.9 of the Plan, certified compensation is defined as "all compensation paid to the Participant by the Participating Employer during a particular calendar quarter for service as an Active Participant which is reportable on Form W-2."  Thus, certified compensation has three required elements, according to Defendant: (1) it must have been paid, (2) during a calendar quarter, and (3) it must be reportable on the employee's W-2 form.  Defendant argues that Plaintiff's ERISA claims fail because Plaintiff requests pension credits for allegedly owed overtime compensation that was never paid.

Defendant further argues that it is allowed to define what constitutes compensation for purposes of calculating pension benefits.  In support of this argument, Defendant cites Haberern v. Kaupp Vascular Surgeons Ltd. Life Defined Benefit Pension Plan, 24 F.3d 1491, 1502 (3rd Cir. 1994), in which the Third Circuit held that a pension plan could exclude certain types of pay, including bonus pay, from its definition of compensation.

Plaintiff does not dispute that Defendant could have defined certified compensation to exclude certain types of pay, specifically overtime pay.  Plaintiff notes, however, that the Plan does not exclude overtime pay from its definition of certified compensation.  What Plaintiff argues is that, once

United States District Court

For the Northern District of California

1  Defendant has established a pension plan, it is under an

2  obligation to provide benefits according to the terms of that

3  plan.  See 29 U.S.C.

4  § 1102(a)(1).

5       Defendant's argument is not persuasive.  Under Defendant's

6  interpretation of the Plan, a Plan participant could earn wages

7  that qualify, under terms of the Plan, as certified

8  compensation, but could be deprived of the corresponding pension

9  credits if Defendant illegally withheld those wages.  The

10 central allegation of the complaint, which must be accepted as

11 true for purposes of this motion, is that Defendant violated the

12 FLSA by not paying Plaintiff overtime wages for overtime work.

13 As Plaintiff argues, Defendant should not be permitted to create

14 the illusion of establishing a pension benefit plan under ERISA,

15 only to avoid thereafter the obligation to pay benefits by

16 violating federal law.

17 II.  Whether Plaintiff Can Bring a Section 502(a)(3) Claim

18      Defendant next argues that Plaintiff may not bring her

19 second cause of action, which seeks injunctive relief under

20 section 502(a)(3) for breach of fiduciary duty, because

21 Plaintiff requests credit to her pension account, for which

22 section 502(a)(3) does not provide.  Defendant notes that

23 section 502(a)(3) of ERISA provides only for injunctive relief

24 or "other appropriate equitable relief."  29 U.S.C. §

25 1132(a)(3).

26      In support of its argument, Defendant cites Pengilly v.

27 Guardian Life Ins. Co. of Am., 81 F. Supp. 2d 1010 (N.D. Cal.

28                              5

United States District Court

For the Northern District of California

1   2000).  In <u>Pengilly</u>, the plaintiff sought, under section

2   502(a)(3), to have his disability benefits increased because he

3   argued that the company benefits plan had breached its fiduciary

4   duty by impermissibly under-calculating his monthly income,

5   thereby reducing his disability benefit payment.  81 F. Supp. 2d

6   at 1025.  A judge of this District dismissed the claim, ruling

7   that the plaintiff's claim was not encompassed by section

8   502(a)(3) because that provision was a "catchall" meant to

9   provide equitable relief where section 502 did not otherwise

10   provide for adequate remedies.  <u>Id.</u> at 1026, <u>citing Varity Corp.</u>

11   <u>v. Howe</u>, 516 U.S. 489, 512 (1996).  According to the <u>Pengilly</u>

12   court, section 502(a)(1)(B) "already provides plaintiff an

13   adequate remedy if in fact Guardian has deprived him of benefits

14   due him under his ERISA plan." <u>Id.</u>  Defendant also relies on

15   <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467 (9th Cir. 1997).  In

16   <u>Forsyth</u>, the court similarly ruled that relief was not available

17   under section 502(a)(3) where adequate remedies were available

18   elsewhere in the statute.  114 F.3d at 1475.

19      Both <u>Forsyth</u> and <u>Pengilly</u> are distinguishable.  In <u>Forsyth</u>,

20   the Ninth Circuit rejected the plaintiffs' attempt to bring a

21   section 502(a)(3) claim because they had already won a judgment

22   for damages on a section 502(a)(1) claim arising out of the same

23   conduct.  114 F.3d at 1475.  In <u>Pengilly</u>, the plaintiff's

24   section 502(a)(3) claim sought direct payment of pension

25   benefits that the plaintiff alleged he was owed; the judge ruled

26   that section 502(a)(1)(B) provided the plaintiff with an

27   adequate remedy.  81 F. Supp. 2d at 1025.  Here, Plaintiff does

28

United States District Court

For the Northern District of California

1   not seek relief under section 502(a)(3) arising out of conduct

2   for which she has already recovered under a different provision

3   of section 502, nor does she seek direct payment of pension

4   benefits.  Rather, Plaintiff seeks equitable relief under

5   section 502(a)(3).  Plaintiff relies primarily upon <u>Matthews v.</u>

6   <u>Chevron Corp.</u>, 362 F.3d 1172 (9th Cir. 2004).  In that case, the

7   plaintiffs sued Chevron, their former employer, for breach of

8   fiduciary duty because they alleged that they should have been

9   classified as "involuntarily terminated," thus becoming eligible

10  for a special enhancement benefit.  <u>Id.</u> at 1176-77.  The Ninth

11  Circuit ordered the defendant, pursuant to section 502(a)(3), to

12  modify its records and label the plaintiffs "involuntarily

13  terminated," thereby making them eligible for the enhancement

14  package.  <u>Id.</u> at 1186.  Addressing the defendant's argument that

15  the order was, in substance, an order to pay damages, and was

16  therefore outside of the scope of section 502(a)(3), the court

17  ruled, "On its face, an order to modify plan records is not an

18  award of monetary damages.  <u>More importantly, the relief granted</u>

19  by the district court here is also equitable in substance." <u>Id.</u>

20      <u>Matthews</u> applies here.  In Plaintiff's second cause of

21  action, she seeks an injunction requiring Defendant to correct

22  the Plan's record of her pension account, and the accounts of

23  all other similarly-situated business systems employees, to

24  include compensation that she alleges the class should have been

25  paid for working overtime.  It is true that, should Plaintiff

26  prevail in this lawsuit, Defendant would be obliged to pay

27  Plaintiff and others similarly situated higher pension benefits.

28

United States District Court

For the Northern District of California

1  However, as the <u>Matthews</u> court noted, "the mere payment of money
2  does not necessarily render the award compensatory 'monetary
3  damages'" that are not permissible under section 502(a)(3).
4  Here, on its face, correcting the Plan's records of pension
5  accounts to include owed certified compensation is not an award
6  of money damages; and, the relief, should it ultimately be
7  granted, is equitable in substance.

8      At the hearing, Defendant attempted to distinguish <u>Matthews</u>
9  by arguing that, in that case, the plaintiffs could not sue
10  under any provision of section 502 other than section 502(a)(3).
11  Defendant asserted that, in this case, Plaintiff's claim arises
12  under section 502(a)(1)(B), so she may not seek relief under
13  section 502(a)(3).   That is not the case.   Plaintiff's claim is
14  not a direct claim for benefits, which would fall under section
15  502(a)(1)(B), but, rather, a claim for an injunction requiring
16  Defendant to correct the Plan's records to credit Plaintiff with
17  allegedly earned certified compensation.   As the <u>Matthews</u> court
18  ruled, the fact that correcting the Plan's records would
19  increase the benefits to which Plaintiff would be entitled does
20  not preclude this relief.   Defendant also argued at the hearing
21  that the plaintiffs in <u>Matthews</u> were no longer employed by
22  Chevron and, thus, no longer covered by the company's
23  unemployment plan.   However, Plaintiff is also a former employee
24  of Wells Fargo, and is no longer covered by the Plan.

25      For the foregoing reasons, Plaintiff may pursue her second
26  cause of action under section 502(a)(3).

27                         CONCLUSION
28

8

1       For the foregoing reasons, Defendant's motion to dismiss

2   Plaintiff's complaint (Docket No. 8) is DENIED.

3       IT IS SO ORDERED.

4

5   Dated: 6/13/05                         /s/ CLAUDIA WILKEN

6                                          CLAUDIA WILKEN
                                           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

# EXHIBIT B

# T. ROWE PRICE TRUST COMPANY
## 401(k) RETIREMENT PLAN
## ADOPTION AGREEMENT

| | |
|---|---|
| Name of Employer: | Lawson Software, Inc. |
| Address: | 380 St. Peter Street |
| | St. Paul, MN 55102 |
| Phone No: | (651) 767-4240 |
| Plan Contact: | Anita Magnuson |

i

T. Rowe Price Plan # _____ 105085

(2) If the Plan is not being amended to comply with GUST:

_____

Effective Date of Amendment (month/day/year)

(Usually, this is the first day of the Plan Year in which the amendment is effective.)

Note: The provisions of a cash or deferred arrangement may be made effective as of the first day of the Plan Year in which the cash or deferred arrangement is adopted, but a salary deferral mechanism may not be adopted retroactively.

(e) Plan Year End: **05/31**
_____
(month/day)

1.3  Plan Number: **001**
_____
(3 digits)

2.  Employer Data.

2.1  Employer: **Lawson Software, Inc.**
_____
(Print or type complete legal name of business)

Employer shall also mean any Employer(s) associated with the Employer named above under section 414(b), 414(c) or 414(m) of the Code.

2.2  Employer's Taxable Year End: **05/31**

2.3  Employer's Tax ID #: **41-1251159**

2.4  The Employer is: ☑ a corporate entity.
                     ☐ a non-corporate entity.
                     ☐ a corporation electing Subchapter S treatment.

3.  Crediting of Service.

3.1  For purposes of determining eligibility to participate, Early Retirement Age (if applicable) and vesting, service shall be credited based on the following method (Choose (a) or (b)):

*See Amendments

(a) ☐  Elapsed Time. Under this method, service is measured from date of employment with the Employer to date of termination of employment with the Employer and a period of service shall include any period of severance of less than 12 consecutive months. (Plan Section 1.19)

(b) ☑  Hours of Service. Under this method, a year of service is a 12 consecutive month period during which the Employee completes at least 1,000 Hours of Service. (Plan Section 1.30) Complete (1) and (2).

(1) Hours of Service will be determined on the basis of the method selected below. Only one method may be selected. The method selected will be applied to all Employees.

(A) ☑  On the basis of actual hours for which an Employee is paid or entitled to payment by the Employer.

(B) ☐  On the basis of days worked for the Employer. An Employee will be credited with ten Hours of Service if under Plan Section 1.30 such Employee would be credited with at least one Hour of Service during the day.

(C) ☐  On the basis of weeks worked for the Employer. An Employee will be credited with 45 Hours of Service if under Plan Section 1.30 such Employee would be credited with at least one Hour of Service during the week.

(D) ☐  On the basis of semimonthly payroll periods worked for the Employer. An Employee will be credited with 95 Hours of Service if under Plan Section 1.30 such Employee would be credited with at least one Hour of Service during the semimonthly payroll period.

3

T. Rowe Price Plan #  _____ **105085**

15.3  Defined Benefit Plan. For Limitation Years beginning before January 1, 2000, if the Participant is or has ever been a Participant in a defined benefit plan maintained by the Employer, the Employer must provide below the method it will use to satisfy the limitation for defined contribution plans in section 415(e) of the Code and, for Limitation Years beginning before January 1, 2000, the 1.0 limitation of section 415(e) of the Code, in a manner that precludes Employer discretion. (Plan Section 6.4)

_____

_____

_____

_____

16.    Employer Securities. (Plan Sections 1.1 and 5.6) (Choose 16.1 or 16.2)

16.1  ☐  The Plan does not permit investment in qualifying employee securities, within the meaning of section 407(d)(5) of ERISA.

*See Amendments

16.2  ☑  The Plan may invest in qualifying employer securities, within the meaning of section 407(d)(5) of ERISA. Unless otherwise limited by supplement to this Adoption Agreement, Accounts may be invested in qualifying employer securities in the same manner as other allowable Investment Options under the terms of the Plan and the Trust Agreement.

17.    Plan Administration. (Plan Article XIII)

The Administrator of the Plan shall be (Choose 17.1, 17.2, 17.3 or 17.4):

Note: Neither T. Rowe Price Trust Company nor any of its affiliates may be appointed Plan Administrator.

17.1  ☐  The Trustee;

17.2  ☑  The Employer;

17.3  ☐  Retirement Plan Committee;

17.4  ☐  Other (complete the following).

Name:  _____

Address:  _____

_____

_____

Note: If no Plan Administrator is indicated above, the Employer shall be deemed the Plan Administrator.

17.    Supplements.

If additional space is required to specify an elective feature under the Plan or to amend the Plan, please attach additional pages as needed. Each additional page must reference the Section of the Adoption Agreement or the Plan to which the amendment applies and must be signed by the Employer and Trustee(s). In addition, each supplemental page must be numbered, and the total number of pages in the Adoption Agreement and additional pages must be indicated in the last Section of the Adoption Agreement.

16

T. Rowe Price Plan # _____ 105085

# EXHIBIT C

# T. ROWE PRICE TRUST COMPANY
## PROTOTYPE 401(k)
## RETIREMENT PLAN

(f) If Employees are covered under both a Top-Heavy defined benefit plan and defined contribution plan of the Employer, the denominators of the defined benefit and defined contribution fractions (as described in Section 6.1 of the Plan) shall be computed by substituting a factor of 1.0 for 1.25. However, if the Top-Heavy Ratio does not exceed 90%, the Employer may use a factor of 1.25 in the fractions provided one of the following is used to satisfy the minimum contribution requirements:

    (i) a minimum benefit of 3% per year of service (up to 30%) is provided in the defined benefit plan;

    (ii) a minimum contribution of 7½% is provided in the defined contribution plan; or

    (iii) a minimum contribution of 4% is provided in the defined contribution plan and a minimum benefit of 3% per year of service (up to 30%) is provided in the defined benefit plan.

12.4  Vesting. For any Plan Year in which this Plan is Top-Heavy, one of the minimum vesting schedules as elected by the Employer in the Adoption Agreement will automatically apply to the Plan. The minimum vesting schedule applies to all benefits within the meaning of section 411(a)(7) of the Code except those attributable to Employee contributions, including benefits accrued before the effective date of section 416 of the Code and benefits accrued before the Plan became Top-Heavy. Further, no decrease in a Participant's nonforfeitable percentage may occur in the event the Plan's status as Top-Heavy changes for any Plan Year. However, this Section does not apply to the account balances of any Employee who does not have an Hour of Service after the Plan has initially become Top-Heavy, and such Employee's account balance attributable to Employer contributions and forfeitures will be determined without regard to this Section.

## ARTICLE XIII - ADMINISTRATION OF PLAN

13.1  Duties and Responsibility of Fiduciaries; Allocation of Fiduciary Responsibility. A fiduciary to the Plan shall have only those specific powers, duties, responsibilities and obligations as are explicitly given him under the Plan and Trust Agreement. In general, the Employer shall have the sole responsibility for making contributions to the Plan required under Article III of the Plan; appointing the Trustee and the Plan Administrator; and determining the Investment Options available for investment under the Plan. The Plan Administrator shall have the sole responsibility for the administration of the Plan, as more fully described in Section 13.2. It is intended that each fiduciary shall not be responsible for any act or failure to act of another fiduciary. A fiduciary may serve in more than one fiduciary capacity with respect to the Plan. When T. Rowe Price Trust Company acts as Trustee of a plan, it acts solely as a directed trustee.

13.2  Powers and Responsibilities of the Plan Administrator.

(a) Administration of the Plan. The Plan Administrator shall have all powers necessary to administer the Plan and total discretion in interpreting and applying the provisions of the Plan, including, but not limited to, the power to construe and interpret the Plan documents; to decide all questions relating to an individual's eligibility to participate in the Plan; to determine the amount, manner and timing of any distribution of benefits or any withdrawal under the Plan; to approve and ensure the repayment of any loan to a Participant under the Plan; to resolve any claim for benefits; and to appoint or employ advisors, including legal counsel, to render advice with respect to any of the Plan Administrator's responsibilities under the Plan. Any construction, interpretation or application of the Plan by the Plan Administrator shall be final, conclusive and binding. All actions by the Plan Administrator shall be taken pursuant to uniform standards applied to all persons similarly situated. The Plan Administrator shall have no power to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan.

(b) Furnishing Trustee with Instructions. The Plan Administrator shall be responsible for furnishing the Trustee with written instructions regarding all contributions to the Trust, all distributions to Participants and all loans to Participants. In addition, the Plan Administrator shall be responsible for furnishing the Trustee with any further information respecting the Plan which the Trustee may request for the performance of its duties or for the purpose of making any returns to the Internal Revenue Service or Department of Labor as may be required of the Trustee.

(c) **Application and Forms for Benefits.** The Plan Administrator may require a Participant or Beneficiary to complete and file with it an application for a benefit and to furnish all pertinent information requested by it. The Plan Administrator may rely upon all such information so furnished to it, including the Participant's or Beneficiary's current mailing address

13.3 **Allocation of Duties and Responsibilities.** The Plan Administrator may by written instrument allocate among its members or Employees any of its duties and responsibilities not already allocated under the Plan or may designate persons other than members or Employees to carry out any of the Plan Administrator's duties and responsibilities under the Plan. Any such duties or responsibilities thus allocated must be described in the written instrument. Such person must acknowledge in writing his acceptance of the duties and responsibilities allocated to him.

13.4 **Appointment of the Plan Administrator.** The Employer shall designate in the Adoption Agreement the Plan Administrator which shall administer the Employer's Plan. Such Plan Administrator may consist of an individual, a committee of two or more individuals, whether or not, in either such case, the individual or any of such individuals are Employees of the Employer, a consulting firm or other independent agent, the Trustee (with its written consent) or the Employer itself. Except as the Employer shall otherwise expressly determine, the Plan Administrator shall be charged with the full power and the responsibility for administering the Plan in all its details. If no Plan Administrator has been appointed by the Employer, or if the person designated as Plan Administrator by the Employer is not serving as such for any reason, the Employer shall be deemed to be the Plan Administrator of the Plan. The Plan Administrator may be removed by the Employer, or may resign by giving notice in writing to the Employer, and in the event of the removal, resignation or death, or other termination of service by the Plan Administrator, the Employer shall, as soon as practicable, appoint a successor Plan Administrator, such successor thereafter to have all of the rights, privileges, duties and obligations of the predecessor Plan Administrator.

13.5 **Expenses.** All expenses of the Plan and Trust (including Trustee's fees) shall, unless paid by the Employer, be paid from the Trust.

13.6 **Liabilities.** The Plan Administrator and each person to whom duties and responsibilities have been allocated pursuant to this Plan document may be indemnified and held harmless by the Employer with respect to any alleged breach of responsibilities performed or to be performed hereunder. The Employer and each Affiliated Employer shall indemnify and hold harmless the Sponsor against all claims, liabilities, fines and penalties and all expenses reasonably incurred by or imposed upon it (including, but not limited to, reasonable attorneys' fees) which arise as a result of actions or failure to act in connection with the operation and administration of the Plan.

13.7 **Claims Procedure.**

(a) **Filing a Claim.** Any Participant or Beneficiary under the Plan may file a written claim for a Plan benefit with the Plan Administrator or with a person named by the Plan Administrator to receive claims under the Plan. The Plan Administrator shall have sole and total discretion in resolving claims.

(b) **Notice of Denial of Claim.** In the event of a denial or limitation of any benefit or payment due to or requested by any Participant or Beneficiary under the Plan ("claimant"), claimant shall be given a written notification containing specific reasons for the denial or limitation of his benefit. The written notification shall contain specific reference to the pertinent Plan provisions on which the denial or limitation of his benefit is based. In addition, it shall contain a description of any other material or information necessary for the claimant to perfect a claim and an explanation of why such material or information is necessary. The notification shall further provide appropriate information as to the steps to be taken if the claimant wishes to submit his claim for review. This written notification shall be given to a claimant within 90 days after receipt of his claim by the Plan Administrator unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of said 90-day period, and such notice shall indicate the special circumstances which make the postponement appropriate.

84